# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**August 6, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**LYDIA C.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-379**     (Fam. Ct. Cabell Cnty. Case No. FC-06-2023-D-365)

**ALVIE S.,**
**Petitioner Below, Respondent**


## MEMORANDUM DECISION

Petitioner Lydia C.[1] ("Wife") appeals the Family Court of Cabell County's August 26, 2025, Final Divorce and Parenting Order. Respondent Alvie S. ("Husband") filed a response in support of the court's order.[2] Wife filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The parties married on December 12, 2015, and share one child, A.S., born on March 1, 2022. They resided together as husband and wife until about July 26, 2023. The Family Court of Cabell County conducted an initial divorce hearing on September 12, 2023, during which the parties placed on the record a prima facie case for divorce on the grounds of irreconcilable differences. During the hearing, the parties agreed to a temporary 50-50 shared parenting plan following a 2-2-3 overnight schedule with shared major decision making, agreed to follow the court's default holiday schedule, and agreed to use AppClose to communicate except in emergencies. Husband continued to reside in the marital home and Wife relocated to an apartment in the area.

After the September 12, 2023, hearing, the parties agreed to retain appraiser Mark Pilcher to evaluate the marital residence to determine the fair market value of the property. Mr. Pilcher's appraisal was approximately $2,000 less than what the parties jointly owed

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Both parties are self-represented on appeal.

1

on the mortgage. Wife thereafter filed a motion to obtain a second appraisal and Husband filed written objections. During a subsequent hearing, the family court explained that if it granted Wife's motion, she would be solely responsible for paying for the second appraisal and Mr. Pilcher's fees for his expert testimony, because Wife and her prior attorney had previously consented to use Mr. Pilcher. Wife then withdrew her motion for a second appraisal and agreed to accept the appraisal value submitted by Mr. Pilcher. Husband requested $360 in attorney's fees he incurred in responding to Wife's motion for a second appraisal, which the court held in abeyance to be addressed at a later hearing.

The family court held four evidentiary hearings on January 27, 2025, May 7, 2025, July 23, 2025, and July 24, 2025, during which both parties appeared with counsel. (Wife was represented by three different attorneys across this timespan.) Prior to the January 27, 2025, hearing, both parties submitted documents in support of their positions on equitable distribution for the court's review. The court documented that Wife agreed with Husband's proposed distribution of marital debts and assets and, therefore, the court found that Wife owed Husband $11,665 to equalize the equitable distribution of the parties' assets and debts, as follows:

| HUSBAND: | | WIFE : | |
|---|---|---|---|
| Can Am | $4,319.41 | Kia | (-$1,498.97) |
| Savings | $10,081.34 | Savings | $18,000.00 |
| Checking | $8,349.00 | Checking | $811.24 |
| House | (-$2,003.92) | 401k | $25,620.00 |
| Med Bills | (-$5,538.32) | Med Bills | (-$5,032.26) |
| NET: | $15,177.51 | Prop Tax | (-$911.47) |
| | | NET: | $38,487.51 |

WIFE :        $38,487.51
HUSBAND: -$15,177.51
            $23,310.00 DIFFERENCE IN EQUITABLE DISTRIBUTION
$23,310/2 = $11,655.00

The court stated it would determine the method and manner of equalizing equitable distribution at a later date. It also left undecided the issue of how to divide the parties' retirement accounts (including Husband's pension) while it waited for Wife to verify with her retirement plan administrator whether she also had a defined benefit pension plan

through her employment. Otherwise, the court resolved all matters of equitable distribution at the January 27, 2025, hearing.[3]

During the May 7, 2025, hearing, the parties agreed to continue the temporary 50-50 shared parenting time and the same 2-2-3 overnight schedule until A.S. reached kindergarten, at which time they would switch to an alternating week on/week off 50-50 schedule. However, the parties could not agree on a holiday schedule. Husband wanted to continue to use the court's default holiday schedule, whereas Wife proposed her own schedule. The family court noted that Wife's proposed schedule would not address all the holidays listed on the default schedule and would consistently deprive Husband of parenting time on Christmas Eve. The parties also did not agree on major decision-making authority, with both requesting sole major decision-making authority. During this hearing, the court announced that it presumed that both parties were fit parents who would not introduce inappropriate people to their child, and that neither party was required to notify the other party of the people they brought around A.S. during their parenting time. The court further announced from the bench that both parents must participate in scheduling A.S.'s medical appointments, must immediately notify each other of any emergency medical treatment they sought without the presence of the other parent, must notify each other of the location of any day trips out of town lasting one hour or longer during their parenting time, and advised the parties that the purpose of video calls with A.S. was so that A.S. could see the absent parent and hear them say they love her, not for the absent parent to interfere with or take away from the other parent's parenting time.

The court further determined at the May 7, 2025, hearing that Husband's request for $360 in attorney's fees for responding to Wife's motion for a second appraisal should be granted and added to the $11,655 equalization payment Wife owed. In the order on appeal, the court reasoned,

> the parties agreed to use a designated appraiser to provide the appraisal value of the former marital residence and did so at a time when both parties were represented by counsel. The agreement of the parties to use a designated appraiser presumptively means that the parties agreed to accept that appraised value provided by the appraiser. Even though the Court finds that [Wife's] motion was in good faith, [Husband] nevertheless had to incur additional legal expenses cause[d] by [Wife's] motion, which she subsequently withdrew. [Husband's] request for attorney fees incurred in responding to [Wife's] motion are incredibly low at $360.00 and the [c]ourt ventures to say they were actually more. Accordingly, the [c]ourt finds that

---

[3] According to the order on appeal, the family court memorialized the January 27, 2025, equitable distribution rulings in an order entered February 7, 2025. However, that order is not in the record before this Court.

[Husband's] request for $360.00 in attorney fees incurred for responding to [Wife's motion] should be granted and added to the $11,655.00.

The family court found it needed additional information from Wife before it decided how Wife should be ordered to make the equalization payment, because Wife had testified about some uncertainty as to the amount in her retirement account. Husband testified that he would prefer to receive what he was owed in a lump sum payment or significant installment payments and not through Wife's retirement account. The court found it needed to consider whether Wife had sufficient funds available in her retirement account, her ability to pay, and the requirement placed on the court to disentangle the parties' post-divorce financial matters as quickly as reasonably possible.

Also, during the May 7, 2025, hearing, Wife made an oral motion to reconsider the equitable distribution order entered February 7, 2025. Wife alleged that she had not taken $811.24 from the parties' checking account as contemplated by the court, and that she should be given credit for payment of an electric bill. Husband objected, saying the issue was resolved by Wife's agreement on the record to Husband's proposed equitable distribution at the January 27, 2025, hearing. The court found that if Wife sought reconsideration of the equitable distribution, she needed to file a written petition requesting such relief and attach proof of her alleged payments so that Husband could respond in writing and the court could rule on the pleadings.

During the subsequent evidentiary hearings, the parties concluded presentation of their cases-in-chief, evidence, and testimony. The court made its findings of fact, conclusions of law, and rulings in its Final Divorce and Parenting Order entered on August 26, 2025.[4] It is from this order that Wife now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

---

[4] The August 26, 2025, Final Divorce and Parenting Order notes that it includes the court's previous findings, conclusions, and rulings "so as to provide the parties and the [c]ourt a single point of reference rather than possibly requiring the parties and the [c]ourt to refer to multiple prior [o]rders."

4

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

First, we must note that Wife's appellate brief wholly fails to comply with Rule 10(c) of the West Virginia Rules of Appellate Procedure, which sets forth the requirements for the contents of the petitioner's brief. This lack of compliance is perhaps most significant for her brief's failure to state any assignments of error as required by Rule 10(c)(3). "The practice of opening a brief with a series of assignments of error serves to alert the Court to the singular issue or issues that may have adversely affected the outcome before the trial court." *Wilson v. Kerr*, No. 19-0933, 2020 WL 7391150, at *3 (W. Va. Dec. 16, 2020) (memorandum decision). Clearly defining the alleged errors committed by the lower court averts any danger that "the Court and respondent may discern different issues from a petitioner's lengthy, free-flowing argument." *Id*. Here, Wife's brief is replete with lengthy and free-flowing arguments that are not focused on any specific assignments of error related to the order on appeal. As we have consistently maintained, we cannot consider indecipherable arguments made in appellate briefs. *See Vogt v. Macy's, Inc.*, 22-ICA-162, 2023 WL 4027501, at *4 (W. Va. Ct. App. June 15, 2023) (memorandum decision) (citing *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (explaining that appellate courts frequently refuse to address undeveloped, perfunctory, or cursory arguments on appeal)). However, we are also mindful that "[w]hen a litigant chooses to represent [herself], it is the duty of the [court] to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party." *Joseph B. v. Candie G.*, No. 24-ICA-425, 2025 WL 1604532, at *2 (W. Va. Ct. App. June 6, 2025) (memorandum decision) (citing *Bego v. Bego*, 177 W. Va. 74, 76, 350 S.E.2d 701, 703 (1986)).

Therefore, we will only address the issues that we can reasonably determine comprise the substance of Wife's appeal. Upon review, we conclude that those issues are whether the family court erred by (1) granting Husband final medical decision-making authority, (2) imposing alleged financial sanctions against Wife, (3) failing to order Husband to reimburse Wife half of all expenses Wife alleges she paid for their child since the date of separation, and (4) demonstrating judicial bias against Wife.

Turning to the first issue, Wife alleges that the family court granted Husband final medical decision-making authority despite what she characterizes as "overwhelming evidence" of her "superior competence" and Husband's "demonstrable medical mismanagement" of their minor child. Wife submits that the family court erroneously penalized her for her rigorous reporting of the child's medication dosage status on AppClose by classifying her as "domineering" in the child's care. She states that her medical advocacy was necessitated by Husband's failure to manage the child's medications properly. She further claims that the court wrongly dismissed her concerns about Husband's refusal to notify Wife regarding the identity of all third parties he introduced to

the child, arguing that the court legitimized what she views as "definitively reckless behavior" by Husband. Wife asks this Court to reverse the family court's finding that she was domineering and grant her sole final medical and educational decision-making authority.

Upon review, we find no merit in Wife's assertions on this issue. The order on appeal contains a detailed analysis of its allocation of decision-making responsibility, makes numerous findings of fact based on the evidence presented, and correctly applies the law to those facts. The order includes a lengthy recitation of examples of Wife's repeated and persistent misconduct regarding the child's medical care and extracurricular activities such that it rebutted the presumption that shared major decision-making was in the best interests of the child pursuant to West Virginia Code 48-9-209(4) (2024). However, despite these limiting factors, the family court only ordered that Father have final decision-making authority when the parents disagree on making educational and medical decisions and otherwise ordered the parties to continue shared 50-50 major decision-making. We find no abuse of discretion or other error by the family court and therefore decline to disturb this ruling.

For her second assignment of error, Wife asserts that the family court erroneously imposed financial sanctions against her by awarding Husband $360 in attorney's fees and ordering her to pay the $11,655 equalization payment from her retirement plan. Wife alleges that the court unfairly penalized her for filing her motion for a second appraisal because Husband explicitly refused to discuss the marital property with her via AppClose, citing to a response message Husband allegedly sent her on July 16, 2024, in which he stated, "I will not be discussing these matters through this app goodbye . . . You will get this information from my lawyer." Wife further contends that her attorneys failed to properly audit her assets and protect her from "punitive financial outcomes" in agreeing to Husband's proposed equitable distribution of the marital assets, and that the family court's order compounded the punitive effect by ordering her to reimburse Husband from her retirement plan while Husband was not forced to reimburse her for what she claims were necessary child-related expenses. We are unpersuaded by these arguments.

West Virginia Code §§ 48-1-305(a)-(b) (2001) provides, in part, that "[c]osts may be awarded to either party as justice requires . . . ." and "[t]he court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action." Further, the Supreme Court of Appeals of West Virginia has held that "an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion." Syl. Pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996).

Here, the family court made findings at the May 7, 2025, hearing and in its subsequent orders that its award of attorney's fees was based on Wife's filing of a motion for a second appraisal after the parties mutually agreed to use a certain appraiser to

6

determine the value of the marital home. Despite Wife's eventual acquiescence to accept the original agreement and appraisal value arrived at by the first appraiser, Husband was still forced to incur additional expenses in responding to Wife's motion. The court determined that under these circumstances, the request for $360 in attorney's fees was not only reasonable but was likely actually less than what was expended. The court also ordered that the fees be paid in combination with the equitable distribution reimbursement Wife owed to Husband, which ultimately was ordered to be paid via a Qualified Domestic Relations Order after the court found Wife did not have the means to make meaningful monthly payments. Notably, upon review of the May 7, 2025, hearing video, Wife made no objection to the court's ruling from the bench concerning the award of attorney's fees, and Wife fails to indicate where she objected to this issue below to preserve the error for appeal. Accordingly, we decline to address this issue. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.") (citations omitted).

Additionally, Wife fails to sufficiently cite to the record on appeal to support her arguments regarding the equitable distribution reimbursement payment and its supposed "punitive financial outcome" on Wife. On appeal, a petitioner's brief must contain "appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." W. Va. R. App. P. 10(c)(7). Other than her vague references to the court's August 26, 2025, order itself, Wife includes no citations to support her assertion that the court penalized her by ordering her to make the equalization payment from her retirement plan while Husband escaped his obligation to reimburse Wife for documented, necessary child-related expenses. Thus, we decline to address this argument. *Id.* (stating that this Court may "disregard errors that are not adequately supported by specific references to the record on appeal").

Turning to the third issue in Wife's brief, we find the same deficiency. Wife baldly alleges that the family court failed to order Husband to reimburse her for child-related expenses, including $25 for winter clothes and $24.67 for a water bottle in February of 2024. However, Wife fails to provide any legal analysis or cite to any legal authority to support her claim that this represents a reversible error by the court. It is well-established that "casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (internal quotations and citation omitted). Accordingly, we decline to address this argument.

Finally, Wife contends that the family court demonstrated clear judicial bias against her. In support of this argument, Wife states that the court required her to submit documentation regarding her retirement plan to confirm whether it was a defined benefit plan but failed to require Husband to submit his tax returns for 2023 and 2024 to verify his

income. Wife alleges this was a punitive demand and it ultimately led to her being ordered to reimburse Husband $11,655 from her retirement plan. Once again, Wife has provided a "skeletal" argument that is unsupported by legal analysis, pertinent authorities, or any citation to the record disclosing her objections or previously filed motion to disqualify the family court judge below.[5] Accordingly, Wife fails to establish any violation of her due process rights pursuant to the alleged judicial bias and this claim fails. *See Xerxes R. v. Richard P.*, No. 24-ICA-76, 2024 WL 5003524 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision) (holding that the petitioner must demonstrate error on the basis of bias or prejudice constituting a violation of a party's due process rights).

Based on the foregoing, we conclude that Wife has not established error by the family court, and we find no reason to disturb the family court's decision. Accordingly, we affirm its August 26, 2025, order.

Affirmed.

**ISSUED:** August 6, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

[5] Notably, even if Wife had filed a motion to disqualify the family court judge below, such motions are not within this Court's jurisdiction. *See* R. Prac. & Pro. for Fam. Ct. 58.

8